ROBERT H. O'CONNOR
67 LAKEN LANE
PALM DESERT, CA  92211

## US DISTRICT COURT OF NOTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ROBERT H. O'CONNOR, a  man**<br>*Plaintiff* | ) CASE NO: **CV 14  0177** |
| | ) |
| vs. | ) **VERIFIED COMPLAINT FOR** |
| | ) **DAMAGES** |
| **CAPITAL ONE;** | ) |
| *Defendant* | ) **JURY TRIAL DEMANDED** |
| | ) |

COMES NOW, the Plaintiff **ROBERT H. O'CONNOR** complaining of the defendant(s) and each of them as follows;

### INTRODUCTION

1. This action is an action brought by the Plaintiff for violation of the Fair Credit Reporting Act, 15 USC§1681, Fair Debt Collection Practices Act, 15 USC§1692, Rosenthal Consumer Protection Act, and Defamation of Character respectively.

**I.** ### THE PARTIES

2. Plaintiff "**ROBERT H. O'CONNOR**" is now and at all times relevant to this action an American National.  Plaintiff is a "consumer" as that term is defined within 15 USC§1692a(3).

3. Defendant "**CAPITAL ONE**" ("Debt Collector") is a limited liability corporation formed under the laws of the state of **California**.  It has a principle place of business located at **1680 CAPITAL ONE DR., MCLEAN, VA 22102** Defendant **CAPITAL ONE** are "debt collectors' as that term is defined by 15 USC§1692a(6).

**II.**                                 **JURIDICITION AND VENUE**

4.  The US District Court of **CALIFORNIA** has jurisdiction pursuant to 15 USC§1692 *et,* al, and 15 USC§1681p *et,* al, and the court has jurisdiction over Plaintiffs tort state claims.  Venue is proper as the Plaintiff currently resides in **CALIFORNIA**.    Therefore venue is proper in the US District Court of **CALIFORNIA**.

**III.**                                 **FACTUAL ALLEGATIONS**

5. Plaintiff brings this action regarding defendants and each of them continued to attempt to collect an alleged debt defendants claim is owed to them.  However Plaintiff is without knowledge of the alleged debt defendants purport to claim is owed.

6.  On  or about **May 16, 2013**, Plaintiff  received a dunning notice (request for payment) from defendant  **"CAPITAL ONE"** (*see,* attached "Exhibit A"). The dunning notice makes numerous claims by the defendant(s) to Plaintiff regarding an alleged loan, mortgage, and or Deed of Trust.  Consequently, Plaintiff is without an specific knowledge and evidence that support defendant's claims and allegations.

7. On or about **July 29, 2013**, Plaintiff served upon them Notice of Validation of Debt pursuant to 15 USC§1692, FDCPA. (*see,* attached "Exhibit B") The notice required the defendant "debt collector" to validate/verify their alleged debt pursuant to 15 USC§1692g

8.   On or about **August 2, 2013** plaintiff received a response from the defendant (*see,* attached "Exhibit C")

9. On  **November 22, 2013**, Plaintiff obtained a copy of his consumer credit report from the three (3) major reporting credit bureaus Equifax, Experian, and Transunion.  Plaintiff discovered defendant **CAPITAL ONE** is reporting this alleged debt to all three credit reporting agencies.  Plaintiff on or around **November 22,**

**2013**, immediately filed a dispute with the credit agencies pursuant to 15 USC§1681, the FRCA.  At the time of this filing erroneous information remains on my report.

10.    Plaintiff has suffered significant economic harm as a result of the erroneous credit reporting by each of the defendant(s).

11.    The above-detailed conduct by each of the Defendants has more to do with their deceptive and illegal acts in their attempt to collect an alleged debt, as opposed to any determined legitimacy of their alleged debt.  The FDCPA, FCRA, and **CALIFORNIA** Consumer Protection Laws relates to the defendants even if they were collecting a legitimate debt.  Plaintiffs asserts for the record Plaintiff asserts neither defendants are creditors. Neither did either defendant provide any credit to Plaintiff.   Notwithstanding each of the defendants are "debt collectors pursuant to 15 USC§1692a(6).  Plaintiffs allege the FDCPA state in part;

The term "debt collector" means any person who uses any instrumentality of Interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or du or asserted to be owed or du another. **Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.**
For the purpose of section 808(6), such term also includes any person who uses any instrumentality of interstate commerce or he mails in any business the principal purpose of which is the enforcement of security interests.

12.  Plaintiff therefore seeks damages as result of defendant's acts.


**IV.**                                      **FIRST CAUSE OF ACTION**
          **VIOLATION OF  15 U.S.C.§1681i FAIR CREDIT REPORTING ACT**

(DEFENDANT)

13.  Paragraph 1 – 13 are re-alleged as though fully set out herein.

14.  Plaintiff is "consumer" within the meaning of the FCRA, 15 U.S.C.§1681a(c).

15.  Defendant is a "DEBT COLLECTOR" are credit furnishers" within the mean of the 15 U.S.C.§1681a(c). 15 U.S.C.§1681s-2(a) prohibits furnishers from reporting inaccurate or erroneous information about consumers.  As such, it placed an affirmative duty on furnishers to correct and update information which they know, or reasonably should know, is inaccurate.  The subsection requires furnishers to flag or otherwise provide notice to credit reporting agencies of any "dispute" by a consumer related to his/her credit information history, FCRA, 15USC§1681s-2(a)(1)-(3). Plaintiff consumer credit report is a consumer report within the mean of 15 U.S. C.§1681a(d).

16.  The FCRA, 15 U.S.C 1681s-2(b) has obligations regarding credit furnishers to investigate consumers disputes.  Subsection 1681s-2(b) specifies a second set of obligations on a furnisher.   These obligations are triggered once a credit reporting agency (CRA) notifies the furnisher that it has received a "notice of dispute' from the consumer pursuant to 15 U.S.C.§1681s-2(a)(2).  After the disputes are received by a CRA from a consumer, it, in turn, is required under 15 U.S.C.§1681i of the FCRA to forward a consumer dispute verification (CDV) form to the furnisher, requiring it to verify the credit information and investigate its accuracy.  After receiving notice of such a dispute from a CRA, a furnisher has 5 mandatory duties it must perform within 30 days:

   (1) to conduct "an investigation" with respect to the disputed Information;

   (2) to "review all relevant information" provided by the

Credit reporting agency;
(3) to "report the results of its investigation" back to the
credit reporting agency;
(4) if the investigation finds the existing information is
incomplete or inaccurate, to report back to those results to
each of the consumer reporting agencies to who the
furnisher originally communicated information about the
consumer; and
(5) to "modify,....delete....or permanently block" the
Reporting of any item of information found to be
Inaccurate after a reinvestigation. 15 U.S.C.§1681s-2(b)(1)

17.  In 15 U.S.C.§1681s-2(b) duties arise only after a furnisher receives notice of

dispute from a CRA.  Notice of a dispute to a furnisher by a consumer directly does

not trigger a furnisher's duty to reinvestigate under 15 U.S.C.§1681s-2(b).  The

consumer must dispute to a CRA, which, in turn, forwards the dispute furnisher.

This indirect "filtering" mechanism must be followed by a consumer to give rise to

a duty of investigation *under the FCRA* to the furnisher.  A furnisher need not honor

a dispute received directly from the consumer, whether oral or written, under the

FCRA Such a dispute, it should be noted, likely does create a legal obligation under

15 USC§1692g of the FDCPA which Plaintiff served upon defendant "**CAPITAL**

**ONE**".

18. Plaintiff notified Defendant DEBT COLLECTOR of its dispute by fax , and

defendant DEBT COLLECTOR  also received notice from the three major credit

reporting agencies Equifax, Experian, and Transunion.  Defendant "**CAPITAL**

**ONE**" failed to delete information found to be inaccurate and erroneous, and/or

failed to property investigate the Plaintiff's disputes.

19. Plaintiff alleges that at all relevant times Defendant DEBT COLLECTOR failed

to maintain, and failed to follow reasonable procedures to assure maximum possible

accuracy of Plaintiff's credit report, concerning the accounts in question, violating

15 U.S.C.§1681 e(b).  Plaintiff alleges that Defendant "PDF" failed to conduct a proper and lawful reinvestigation.

20.    All action taken by the Defendant "DEBT COLLECTOR" and Equifax, were done n malice, were done willfully, and were done with either the desire to harm Plaintiff and/or with the knowledge that their actions would very likely harm Plaintiff and/or their actions were taken in violation of the FCRA and state law and/or they knew or should have known that their action were in reckless disregard of the FCRA and state law.  Defendants and each of their acts constitutes multiple willful non-compliance with FCRA.

21.    All of the  violations of the FCRA proximately caused the injuries and the damages to Plaintiffs as set forth in this Complaint.   The FCRA requires the following of the Defendant Equifax;

(1) Prompt Notice of Dispute to Furnisher of Information

(A) *In general.* Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1) the agency shall provide to the person who provided the information in dispute all relevant information regarding the dispute that is received by the agency from the consumer or the reseller.

(B) *Provision of other information.*  The consumer reporting agency Shall promptly provide to the person who provided the information in dispute That is received by the agency from consumer or the reseller after the period referred to in subparagraph (A) and before the end of the period referred to in paragraph (1)(A)

(2)    *Consideration of consumer information.* In conducting any reinvestigation under paragraph (1)(A) with respect to such disputed information.

(3)    Treatment of Inaccurate or Unverifiable Information

(A) *In general.* If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall-

(i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and

(ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer.

22. Plaintiff has been significantly harmed by defendant "CAPITAL ONE" due to the erroneous reporting of the alleged debt. Due to defendants acts, Plaintiff has suffered damages that led to multiple denials of credit. The multiple denials of credit were a direct reflection of defendants erroneous credit reporting. Plaintiffs credit based on a deteriorated credit score and credit worthiness. Defendant negligent and noncompliant acts may have been direct violation of 15 USC§1681(n) and 15 USC §1681(o) respectively.

23. Therefore, Plaintiff demands judgment for damages against Defendant "DEBT COLLECTOR" for actual damages, punitive damages, and statutory damages of $1,000.00 attorney fees, and costs pursuant to 15 USC§1681(n) and 15 USC§1681(p).

V.                          **THIRD CAUSE OF ACTION**
                           **INVASION OF PRIVACY**
                              (DEFENDANT)

24. Paragraph 1 – 25 are re-alleged as though fully set out herein.

25. Defendant "CAPITAL ONE" is a "debt collector" and a stranger to the Plaintiff. Plaintiff has no contractual relationship with defendant "CAPITAL ONE" and has never applied for credit or services with the defendant.

26. Plaintiff's right to privacy are also an enumerated Constitutional right, both in the State and Federal Constitution.  Plaintiff has been damaged in that their proprietary, confidential, most personal information was unlawfully and illegally breached by defendant "DEBT COLLECTOR".  Importantly Plaintiffs are most concerned with the fact that Plaintiff "did not" provide their social security number to either defendant "DEBT COLLECTOR". Plaintiff support this assertion by the mere fact that no credit, application or services was applied nor received from the defendant "DEBT COLLECTOR".

27. Plaintiff has a right to discovery, to determine where Defendant obtained their personal, private information from.  Specifically Plaintiff will investigate through discovery where defendant obtained Plaintiffs social security number from, and what additional proprietary information was obtained by the defendant illegally and unlawfully, and how that information is being used.   Defendant DEBT COLLECTOR may also be guilty of identity theft under state and federal law.

28. Therefore defendant "**CAPITAL ONE**" is liable to Plaintiff for actual punitive, consequential, compensatory damages in an amount determine at trial or by the court.

## VI.                 FOURTH CAUSE OF ACTION
### NEGLIGENT, WANTON, AND/ORINTENTIONAL HIRING AND SUPERVISION OF INCOMPETENT EMPLOYEES OR AGENTS, AND
### (DEFENDANT)

29. Paragraph 1 – 61 are re-alleged as though fully set out herein.

30. Defendant  "**CAPITAL ONE**" was aware of their wrongful conduct in creating an alleged debt Plaintiffs are not obligated to, or are not able to discern the amount and character of the alleged debt.  Defendant knew and approves of its incompetent employees and agents, attorney debt collectors, repossession agents, and debt collection against the Plaintiff.  Defendant **CAPITAL ONE** negligently, wantonly,

and/or intentionally hired, trained, retained, and/or supervised incompetent debt collectors in defendant **CAPITAL ONE** is therefore responsible and liable to the plaintiff for the wrongs committed against them, and the substantial damages suffered by Plaintiffs.

31.   Therefore Plaintiffs is entitle to punitive, consequential, actual, and special damages, and any other such damages the court deems necessary.

**VII.                         SIXTH CAUSE OF ACTION**

**VIOLATION OF 15 USC 1692, FAIR DEBT COLLECTIONS PRACTICES ACT**

32.   Paragraph 1 – 41 are re-alleged as though fully set out herein.

33.   All paragraphs of the Complaint are expressly adopted and incorporated herein as if fully set forth herein.

34.   Plaintiff is "consumer" as defined in 15 USC§1692a(3).   Defendants "**CAPITAL ONE**" are 'debt collectors" as defined in 15 USC§1692a(6). Defendants were attempting to collect a debt for "household purposes" 15 USC§1692a(5).

35.   Plaintiffs served defendant and each of them were served notice with a Notice of Dispute in compliance with 15 USC§1692g. 15 USC§1692g requires defendant to provide Plaintiffs with verification of the alleged debt once received.   15 USC§1692g(5)(b) requires defendant to cease all collections activity until the debt collector obtains verification of the alleged debt.  Defendants and each of them has §failed to provide one scintilla of proof of their alleged debt.  However defendants continue to make attempts at collection of the alleged debt through erroneous credit reporting, and illegal acts of foreclosure.

36.   Defendants violated the FDPCA, and caused damages to Plaintiff by their failure to comply with the Act.  Defendant's violation include, but are not limited to the following:

a. Defendant violated 15USC§1692d of the FDCPA by engaging in conduct that natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of an alleged debt and;

b. Defendant violated 15USC§1692(j) of the FDCPA by using unfair or unconscionably means in connection with the collection of an alleged debt;

c. using unfair or unconscionable means to collect or attempt to collect a debt, in violation of 15 USC§1692f;

d. Defendant violated the 15 USC§1692(e)(8) requires debt collectors to communicate to the disputed stats of a debt if the debt collector "knows or should know" that the debt is disputed, standard requires no notification by the consumer, written or oral, and instead, depends solely on the debt collector's knowledge that a debt is disputed, regardless of how or when the knowledge is "acquired."

37.    Specifically defendant "DEBT COLLECTOR" knew it was not entitled to collected on the non-existent debt.

38.    Defendants were fully aware that each of them were/are unable to provide performance contract executed by Plaintiff, whereby Plaintiff are obligated to defendants.

39.    Therefore defendants are liable to Plaintiffs for damages to their consumer credit report which resulted in higher auto insurance premiums, higher interest rates, emotional, mental stress, insomnia, embarrassment, loss of sleep, anxiety, and other related damages due to defendant's act.

Dated: January 10, 2014

_Robert H. O'Connor_
ROBERT H. O'CONNOR, *Plaintiff*

EXIHIBIT A



Capital One, N.A.
PO Box 21887
Eagan, MN 55121
1-800-933-9100 Toll-Free
Office Hours: Monday-Friday, 8:30 AM to 6:30 PM ET

October 05, 2013



3-752-55541-0000008-001-1-000-000-000-000

Robert H Oconnor
330 Primrose Rd.,#216
Burlingame, CA 94010

## PAYOFF STATEMENT

Borrower:                                    Property Address:
Robert H Oconnor                             67 Laken Lane
                                             Palm Desert CA 92211
330 Primrose Rd.,#216
Burlingame CA 94010

Loan No:  0553086307
Loan Type:  Conventional
Interest Paid To:  April 01, 2013

The interest figure below is good to 10-30-13. Funds not received by
10-30-13 will require an additional $ 26.85 interest per day.
Interest is calculated on a 30 day month using 360/365 day basis.

The current total unpaid principal balance is:          $      412,692.14
Interest to 10-30-13, AT  2.37500%                               5,679.48
Corporate Expense (RECOVERABLE)                                    20.56
Unpaid Late Charges                                              752.20
F/C Bankruptcy Costs                                                .00
* * * * * * Total Amount Due Capital One * * * * * $        419,144.38

The above figures are subject to final verification upon receipt of the
payoff remittance to Capital One, N.A.  Payoffs cannot be processed
unless the "Total Amount Due Capital One", shown above, is remitted.
This statement will remain in effect until a payment is made or escrows
are advanced, but in no event for more than 30 days.  The total amount
secured by the Mortgage, pursuant to this statement, is further
conditioned upon:



1. Payoff funds must be in CERTIFIED FUNDS in the form of a cashier's
   check or official bank check (except that company checks will be
   accepted from settlement agents and closing attorneys.)  If payoff
   funds are sent by mail interest will be due up through the date of
   receipt.  Checks are to be made payable to your current servicer,
   Capital One, N.A. and mailed to:
       Capital One, N.A.
       Mortgage Payments: 31063-1111
       7933 Preston Road
       Plano, TX 75024
   Send wire transfer to:
       ABA Number: 255071981
       ATTN: Payoff Dept - G/L 14033185-28542
       Account Number to be Credited: 0553086307
       Beneficiary: Robert H Oconnor

To receive proper credit, checks must be received no later than 3:00pm,
Central Time, Monday through Friday excluding holidays.  Credit will be
given only when actually received.  Funds received at other times or at
any other address are subject to delayed crediting and additional daily
interest charges.

2. Issuance of this statement does not suspend the contract
   requirement to make the monthly mortgage payments when due. A late
   charge of 108.04 will be assessed 15 days after a current paymen t
   is due if the payment is not received.  The late charge amount
   should be added to the payoff total if received after this time.



October 05, 2013
PAYOFF STATEMENT

LOAN NO:0553086307

Capital One, N.A. reserves the right to adjust payoff figures if any
previously received remittance is rejected by the institution upon which
it was drawn or additional disbursements made by Capital One, N.A.
between the date of this payoff statement and the receipt of funds.
Capital One reserves the right to demand additional funds, before or
after release of lenders security interest, in order to correct any error
or omission made in good faith, whether mathematical, clerical
typographical, or otherwise.

All tax and/or insurance bills received between the date of this
statement and the date the payoff is received, will be paid from the
escrow account. Any remaining escrow balance will be refunded within
15 business days of the date of payoff.

The payoff figure may include amounts due displayed on the payoff
statement as unpaid OTHER FEES or Corporate Expense.  If you would like
a detailed explanation of any amounts displayed as unpaid OTHER FEES
or Corporate Expense please contact the Customer Service department at
1-800-933-9100.  These fees may include charges assessed on your account
comprised of the following fee types:

| | |
|---|---|
| CO-OP DELINQUENCY FEE | GRANT FEE |
| CONVERSION-PROCESS | LOSS MITIGATION |
| PARTIAL RELEASE FEE | TITLE FEE/RESETS |
| CREDIT VERIFICATION | CONSTRUCTION PERIOD FEES-TRANSFER |
| ASSUMPTION FEE | APPRAISAL FEE |
| MODIFICATION FEE | FLOOD CERTIFICATION FEE |
| TRUST FEES | LOSS DRAFT/PROP INSPECTION |
| SUBORDINATION FEE | PROPERTY INSPECTION |
| BANKRUPTCY INTEREST | TITLE SEARCH FEE |
| BALLOON RESET FEE NY CONSOL. ASSGN (CEMA) | |

NOTICE TO AUTOMATIC PAYMENT DRAFT CUSTOMERS:   If your monthly
payments are automatically deducted from a checking or savings
account, Capital One, N.A. requires notice at least 10 business days
prior to payoff to cancel your automatic payment draft.  This request
can be made at www.CapitalOne.com/mortgageaccess or by calling Customer
Service at 1-800-933-9100, option 2.  Otherwise, automatic payment draft
will remain in effect until payoff funds are received and the loan is
paid in full. If your unpaid principal balance is less than your minimum
monthly mortgage payment your loan payment will not draft.

N31



PAYOFF STATEMENT
Page 3
October 05, 2013

Loan No. 0553086307

Mortgagor's Name:  Robert H Oconnor
Property Address:  67 Laken Lane
                   Palm Desert CA 92211

<u>DESCRIPTION OF PREPAYMENT PENALTY</u>

Please refer to your loan documents for a description of your
prepayment penalty.

XP994-033/N31

EXIHIBIT B

# ASSOCIATES

P.O. Box 91053
Henderson, NV  89009
888-250-6713 - Office
888-250-5074 - Fax

July 29, 2013

Robert O'Connor
**Acct. #0553086307**
67 Laken Lane
Palm Desert, CA.  [92211]

Capital One Home Loans
**Attn: Foreclosure Department**
1680 Capital One Dr.
McLean, VA  22102

Re: Discrepancy/Pending Foreclosure

To Whom It May Concern:

The above-named homeowner(s) has hired us to assist them in resolving their discrepancy with the purported lender, who claims to be owed money by the homeowner for a loan number **0553086307**, in the amount of **$470,000.00**, given on **July 1, 2003**, for the purchase of their property located at **67 Lake Lane, Palm Desert, CA.  [92211]**.

Please be advised that this letter is our **formal dispute in this matter as well as our formal request for the information requested**; which will provide us clarity on the purported loan with the original lender on the according to the deed of trust.

Please provide us with a copy of loan document(s), a copy of the cancelled check with our client endorsement, and bank stamp indicating that it was received, and cashed by our client, a copy of the wire transfer showing these funds being wired into our clients account at the time of the transaction, or any other documentation that you might have that would substantiate the claim that a loan was given, and received by our client.

You should know that as we have a third-party authorization and/or a Power of Attorney (copy attached), you have no legal justification for failing to provide us with this information if it actually exist.

Please be advised that **your claim is now in dispute**, and we expect you to act in good faith, abiding by the Fair Debt Collection Practices Act and Fair Debt Credit Reporting act, by postponing, cancelling, and/or suspending any and all schedules sales on the property until this discrepancy is resolved without recourse.

You should know that a copy of this document, and all other correspondence will be recorded in the county recorder's office where the property is located as a matter of record.

Furthermore we have yet to receive a response to our request for a QWR, which was sent to you on June 27, 2013. We are question the legality of your continuing with a foreclosure sale date if you have fail to respond to the discrepancies raised in the QWR.

Please ensure that all responses contain a name, title, contact phone, and fax number of a qualified point of contact, as our questions are specific in nature and we are aware that not just any customer service representative will be able to address any further concerns which might arise.

We expect your response to our request within twenty-one (21) days from the date of this letter.

If there is a pending sale date on this property we again expect you to act in good faith and abide by your legal obligation to advise the trustee, and any other pertinent party of this discrepancy, instructing them to immediately cease, and desist any foreclosure sale until further written notification.

Please be advised if you are the trustee, attorney or debt collector acting on behalf of the purported lender, and move forward with a sale regardless of your receipt of this notification, you will be held liable to the fullest extent of the law.

If for any reason you are unable or refused to provide us with the requested documentation please supply us with written correspondence explaining your denial of our request.

Thank you for your prompt attention, understanding, and cooperation regarding this matter.

Sincerely,

*Kimberly Johnson*

Butler, Phelps, Kaufman & Associates



Capital One, N.A.
PO Box 21887
Eagan, MN 55121

August 2, 2013

Butler, Phelps, Kaufman Associates
PO Box 91053
Henderson, NV 89009

Re:   Loan No:            0553086307
      Property Address:   67 Laken Lane
                          Palm Desert, CA 92211

Dear Butler, Phelps, Kaufman Associates:

Our office is in receipt of your correspondence received on July 29, 2013, regarding the above
referenced loan.

Your correspondence stating that it is a QWR under Section 6 of the Real Estate Settlement
Procedures Act (RESPA), which relates only to servicing issues.  Your correspondence does not
provide specific reasons and examples as to why you believe Capital One's servicing of the
loan is in error. You have not provided any specific questions and examples as to the loan.
You have requested various documents; however, many are not applicable to the servicing of
the loan. This request falls outside the scope of Section 6 of RESPA. Because you have not
identified a specific request, there is no QWR for which Capital One can respond. If you still
have outstanding concerns regarding the servicing of the loan, please submit correspondence
articulating the specific error(s) that you would like addressed. In addition, should you need
account related documentation, we request that you contact our Customer Service
Department at the telephone number provided below.

Enclosed is a copy of the loan Note to satisfy your debt validation request.

Chevy Chase was acquired by Capital One N.A., thus Capital One not only became the servicer
of the loan, but also the investor.

For further assistance, please contact the account manager, Temitayo O, at (877) 230-8516
extension 443-8000.

 If you have any questions, please contact our Mortgage Customer Service Department at
(800) 933-9100, option 2, Monday through Friday 8:30am to 6:30pm ET.

Sincerely,

Customer Service Department

cc: Robert H OConnor

553086307

●MIN 1000153-0553086307-9

CERTIFIED TO BE A TRUE COPY
OF THE ORIGINAL
Chicago Title Company
BY _____

# ADJUSTABLE RATE NOTE
(1 Month LIBOR Index - Payment and Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. MY MONTHLY PAYMENT INCREASES AND DECREASES MAY BE LIMITED AND MY INTEREST RATE INCREASES ARE LIMITED. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE LIMIT STATED IN THIS NOTE.**

July 1, 2003      SAN MATEO      California
[Date]          [City]          [State]

67 LAKEN LANE, PALM DESERT, CA 92211

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay **Four Hundred Seventy Thousand and 00/100** Dollars (U.S. $ **470,000.00** ) (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **Chevy Chase Bank, F.S.B.** . I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by Transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

**(A) Interest Rate**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at the yearly rate of **1.950** %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7 (B) of this Note.

**(B) Interest Rate Change Dates**

The interest rate I will pay may change on the first day of **September, 2003** and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date.

**(C) Interest Rate Limit**

My interest rate will never be greater than **19.900** %.

**(D) The Index**

Beginning with the first Interest Rate Change Date, my interest rate will be based on an Index. The "Index" is the one month London Interbank Offered Rate (LIBOR) as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day after the twenty-fifth day of the month immediately preceding the month in which the Interest Rate Change Date occurs is called the "Current Index."

If the Index or any Index previously substituted under this Section 2 (D) is no longer available, or is otherwise unpublished, the Note Holder may choose a new Index and a new Margin to result in a rate similar to the rate in effect at that time which is based upon comparable information. The Note Holder will give me notice of the choice.

CHCF2-Multi Rev. 11/25/2002      Page 1 of 5
9194098

553086307
MIN  1000153-0553086307-9

(E)  Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder  will calculate my new interest rate by adding Two and 200/1000                     percentage points ( 2.200 / %) (the "Margin") to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the interest rate limit stated in Section 2 (C), the rounded amount will be my new interest rate until the next Interest Rate Change Date.

3.  PAYMENTS

(A)  Time and Place of Payments

I will pay principal and interest by making payments every month.  I will make my monthly payments, as described in Subsections B through F, below, on the first day of each month beginning on September 1, 2003 /  .  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  My monthly payments will be applied to interest before principal.  If, on /August 1, 2033         , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." I will make my monthly payments at P.O. Box 17000, Baltimore, MD 21203          . or at a different place if required by the Note Holder.

(B)  Minimum Payment

As of the date of this Note, my "Minimum Payment" of principal and interest is $ 1,725.65 /.  This amount will remain the same for the first  12  monthly payments due under this Note.  Thereafter, my Minimum Payment is subject to change as described in detail, below.  I must make at least the Minimum Payment each month.

(C)  Additions/Reductions to My Unpaid Principal

My Minimum Payment may be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe in full on the Maturity Date in substantially equal payments.  If this occurs, each month that my Minimum Payment is less than the interest portion, the Note Holder will subtract the amount of that payment from the amount of the interest portion and will add the difference to my unpaid principal.  The Note Holder also will add interest on the amount of this difference to my unpaid principal each month.  The interest rate on the interest added to principal will be the rate set forth in Section 2 (A) above.

(D)  Payment Changes

My Minimum Payment will change under the following circumstances:

(I)  Payment Change Dates

My monthly Minimum Payment may change on the first day of  /September, 2004         , and on that same day every 12th month thereafter.  Each of these dates is called a "Payment Change Date." Before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay my unpaid principal in full on the Maturity Date in substantially equal installments at my new interest rate calculated pursuant to paragraph 2(E) above.  My new monthly Minimum Payment will be set equal to the recalculated amount except that my new Minimum Payment will not be more than 7.500 percent greater or less than the amount of the last monthly payment that was due before the applicable Payment Change Date.

(II)  Adjustment Dates

Notwithstanding Subsection (I), above, on the  5th    Payment Change Date and on each succeeding 5th Payment Change Date thereafter, my Minimum Payment will be adjusted as explained above, except that the described 7.500 percent limitation will not apply.

553086307
· MIN   1000153-0553086307-9

    **(iii)  Other Changes**
      My monthly payment may also change as described in Section F, below.
  **(E)  Payment Options**
    Additional payment options, such as: (i) a fully-amortizing payment (i.e., a payment that would be sufficient to repay the unpaid principal balance in full on the Maturity Date in substantially equal installments at the current Fully Indexed Rate); (ii) an interest-only payment (i.e., a payment equal to the interest accrued on the principal balance at the Fully Indexed Rate); and, (iii) a 15-year amortization option, may, at the Note Holder's discretion, be shown on my monthly statement.  These payment options are shown for my convenience and may change each month based on changes in the Index (as described in Section 2 (D) ) and changes in the amount of my principal balance.  Although none of these optional payments is required, a timely payment made in accordance with any payment option shown on my monthly statement will be deemed to be in compliance with the terms of this Note.  In all events, a payment option offered on my monthly statement will never be less than my Minimum Payment.
    **(F)  Payment Limitations**
    In all events, my unpaid principal balance can never exceed 110 percent of the principal amount I originally borrowed ("Original Balance").  If on any monthly statement any payment would cause my principal balance to exceed that maximum amount, my Minimum Payment on that statement will be adjusted to an amount that would cause my unpaid principal balance to equal 110 percent of my Original Balance.  Thereafter, until otherwise changed in accordance with the terms of this Note, my Minimum Payment will be adjusted to an amount which would be sufficient to repay my then unpaid principal balance in full on the Maturity Date at my current interest rate in substantially equal payments.

**4.  NOTICES OF CHANGES**
    The Note Holder will deliver or mail to me a notice of any changes in the amount of my Minimum Payment at least 25 days before the effective date of any change.  The notice will contain the interest rate or rates applicable to my loan for each month since the prior notice or, for the first notice, since the date of this Note, and the payment amount applicable to the loan.  The notice will also include information required by law to be given to me, and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.  BORROWER'S RIGHT TO PREPAY**
    I have the right to make payments of principal at any time before they are due.  A payment of principal only is known as a "prepayment."  When I make a prepayment, I will tell the Note Holder in writing that I am doing so.  I may make a full prepayment or partial prepayments, without paying any prepayment charge (subject to any Prepayment Penalty Addendum included in the Loan Documents).  The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note.  A partial prepayment, will not result in a change in the amount or due dates of any of my monthly payment options unless the Note Holder agrees in writing to those changes.  My partial prepayment may reduce the amount of some of my payment options after the first Payment Change Date following my partial prepayment.  However, any reduction due to my partial prepayment could be offset by an interest rate increase.  My partial prepayment will not affect the amount of my Minimum Payment following my partial prepayment unless I comply with the following:  (1) notify the Note Holder in writing of my desire to have the Minimum Payment recalculated prior to the next scheduled Payment Change Date;  (2) execute the loan modification documents required by the Note Holder to effectuate said recalculation; and (3) pay to the Note Holder a $500.00 modification fee.

553086307
MIN  1000153-0553086307-9

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges (the "Maximum Rate"), is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then, as my sole remedy (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the late charge will be five (5) percent of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above, or at a different address if I give the Note Holder a notice of my different address. Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3 (A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

553086307
MIN   1000153-0553086307-9

**10.  WAIVERS**     I and any other person who has obligations under this Note waive rights of presentment and notice of dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of these conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of the Security Instrument.  Lender shall also not exercise this option if:  (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in the Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender may also require the transferee to sign an Assumption Agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in the Security Instrument.  Borrower will continue to be obligated under the Note and Security Instrument unless Lender releases Borrower in writing.  If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument.  If the Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

Witness the Hand(s) and Seal(s) of the Undersigned.

_____     7/2/03      _____
ROBERT W. O'CONNOR                     Date                                      Date
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

_____                  _____
                                       Date                                      Date

LSCF2-Nd tl  Rev. 11/25/2002                    Page 5 of 5
91P4890

EXIHIBIT C

JO ANN O'CONNOR
ROBERT O'CONNOR
75940 Nelson Ln
Palm Desert, Ca. 94010

US DISTRICT COURT OF _____

| | |
|---|---|
| **CAPITAL ONE, N.A.** <br> *Alleged Plaintiff* | ) CASE NO: <br> ) <br> ) <br> ) |
| vs. <br> **JO ANN O'CONNOR,** <br> **ROBERT H. O'CONNOR** <br> *Defendant in Error* | ) <br> ) **CONSUMER NOTICE OF** <br> ) **DISPUTE OF DEBT** <br> ) <br> ) |

**JO ANN O'CONNOR AND ROBERT H. O'CONNOR,** pursuant to 15 USC§1692g, Fair Debt Collection Practices Act ("FDCPA) hereby disputes the alleged debt Plaintiff claims in the above titled matter. Therefore this Notice shall be deemed a request/demand for "verification" and debt validation request as defined by 15 USC§1692(g)(1)(2)(5)(b) and CALIFORNIA Consumer Protection Statutes/Laws.

Defendant **JO ANN O'CONNOR AND ROBERT H. O'CONNOR** hereby requests validation  pursuant to 15 USC§1692.  Specifically, I dispute as to the identity of the true owner (if any) of the alleged debt, the alleged amount due, and owing, I dispute all signatures appearing on the Plaintiff's unauthenticated hearsay documents, and the plaintiffs alleged authority and capacity to collect and or sue on behalf of the same.  Alleged Plaintiff and "debt collectors" as that term is defined by 15 USC§1692a (6).

Defendant **JO ANN O'CONNOR AND ROBERT H. O'CONNOR** is a "consumer" as that term is defined by 15 USC§1692a (3).  Plaintiff **CAPITAL**

**ONE, N.A.** is attempting to collect a "household debt" as that term is defined by 15 USC§1692a (5).

Lastly Defendants reviewed their consumer credit reports upon viewing whereby it was revealed alleged Plaintiff **CAPITAL ONE, N.A.** is reporting an alleged mortgage debt account.  I request Plaintiff to delete the in accurate information immediately pursuant to 15 USC§1681 et, al. Parties must comply with the request timely and completely.  Failure to provide the above documentation will result in Defendant **JO ANN O'CONNOR AND ROBERT H. O'CONNOR** filing a counterclaim for damages.


Dated: January 10, 2014



_____
JO ANN O'CONNOR, *Defendant*
3123 Hillside Dr.
Burlingame, Ca.  94010

_____
ROBERT H.  O'CONNOR, *Defendant*

CERTIFICATION OF SERVICE

I certify that the above document styled Notice of Dispute was served upon the defendant name below by US First Class Mail;

CAPITAL ONE , N.A.
C/O CSC – LAWYERS INCORPORATING SERVICE
2710 GATEWAY OAKS DR., STE 150N
SACRAMENTO, CA 95833